(14 Misc. Rep. 304.)

CANAVAN et al. v. DWYER.

(Common Pleas of New York City and County, General Term. November 4, 1895.)

1. SET-OFF AND COUNTERCLAIM—WHEN ALLOWABLE.
　　A contract for the excavation of earth and stone required the contractor to furnish the other party with a certain amount of a certain kind of stone, to be quarried from the stone excavated. The contract did not specify the intervals at which such stone should be furnished, nor require that all the stone excavated should be quarried. The contractor, because of the obstructions interposed by the other party, abandoned the work before its completion. *Held*, that the other party to the contract, in an action by the contractor to recover for the work performed, could not counterclaim for failure of the contractor to quarry the stone excavated, as it could not be said that the full amount of stone would not have been quarried if it had not been for the obstructions.

2. CONTRACTS—CONSTRUCTION.
　　A contract between a contractor for city work and a subcontractor, after providing for the excavation of earth and stone, required the subcontractor to perform such work as the contractor might be required to do under the headings "rock excavation," "earth excavation," and "embankment," in the specifications of the city work "not herein otherwise provided for"; and further provided that all earth found in the earth excavation should be removed and deposited by the subcontractor as directed by the contractor, "and, if necessary, should be first piled, and afterwards spread over the embankment." The clause last quoted was stricken out, by drawing a line through it, before the contract was executed. *Held*, that the subcontractor was required to do the embankment work required by the specifications without additional compensation, as the act of striking out the clause did not show an intention to dispense with the specific obligation to do such work.

Appeal from special term.

Action by John Canavan and others, subcontractors, against Thomas Dwyer and others, to foreclose a mechanic's lien on funds in the hands of the comptroller of the city of New York, due to defendants by virtue of a contract entered into between them and said city. Laws 1878, c. 315, and amending acts; Consolidation Act, §§ 1824, 1838. There was a judgment in favor of plaintiffs, and defendant Dwyer appeals. Reversed, unless plaintiffs remit part of recovery.

Argued before BISCHOFF and PRYOR, JJ.

Henry Daily, Jr., for appellant.
L. Laflin Kellogg, for respondents.

BISCHOFF, J. The plaintiffs' right to recovery and the availability of the defendant's counterclaims had respective dependence upon the question whether the plaintiffs' discontinuance of work under their contract with the defendant was rightful or wrongful, and, upon the evidence, we have but to concur in the views expressed by the learned trial judge, that the defendant's acts of prevention justified the plaintiffs' failure to complete the work assumed. It was Dwyer's refusal to remove a certain boiler, directly in the line of the excavation undertaken by the plaintiffs, and as laid out by the engineers, which removal was essential to the continuance of the work, together with his declaration that he would hold the plaintiffs to any damage resulting to the boiler from their operations, which caused the latter to stop their work, and the record shows that the position taken by them was thoroughly justifiable.

Upon the question of the amount of work performed by the plaintiffs, and for which the facts prove they were entitled to recover at the contract price (Thorp v. Ross, *43 N. Y. 546; Flaherty v. Miner, 123 N. Y. 389, 25 N. E. 418), there is practically no dispute; but our attention is to be directed to a question involving the merits of a counterclaim by the defendant, and which is also brought up upon the issue of the plaintiffs' proper performance. This deals with the following clause of the contract between the parties:

"First. The rock excavated shall be quarried by the said parties of the second part [these plaintiffs] in such a manner that all bottom stone found on the premises can be used as bottom stone, and about one thousand three hundred cubic yards of rock excavated, or such other quantity as the party of the first part may require for broken ashler masonry on said job, shall be quarried or split up by the said parties of the second part, in such a manner as to give two level beds, and one face to each stone, at such an angle to the bottom bed of said stone as the upright position of the wall may require, and the two ends shall be at right angles to the face," etc.

As has been said, there is no question as to the actual excavation of rock made by the plaintiffs, and fundamentally the contract called for but two kinds of work,—excavation of rock and of earth; but it is contended that the plaintiffs did not quarry and split the stone for "broken ashler masonry" in exact accordance with the

above terms. It is to be noted, first, that the contract did not call for the quarrying of all the stone excavated in such a manner as to be available for "broken ashler masonry." The plaintiffs, in the execution of their contract, were to furnish a certain amount of stone so quarried, but the agreement fails to specify at what intervals it should be supplied. There is no question that "broken ashler masonry" stone was furnished, and, according to some of the testimony, in compliance with the strict terms of the contract. Further, the defendant retained a sum of money from payments due the plaintiffs, for the purpose of dressing certain of the stone, so as to form it as required. The rock excavated was found, in places, to be of a nature little adapted for quarrying and splitting, as called for, but it is in evidence that the plaintiffs quarried it in the manner required, as nearly as possible. Moreover, performance of the contract having been prevented, it cannot be said that the full amount of stone for "broken ashler masonry" called for would not have been furnished by the plaintiffs at the time of its completion had they been unobstructed. Such being the case, it is not to be held that the plaintiffs failed in performance of their work, and the above facts also bear against the counterclaim for sums expended in dressing and facing the stone, apart from the fact, as pointed out by the learned trial judge, that the proof as to the amount so expended was insufficient to form the basis of a recovery by the defendant.

Certain lesser items of the plaintiffs' recovery are found to have been properly allowed; in fact, no point is raised but with regard to the claim for damages occasioned by the defendant's delay of the plaintiffs' work, and the record amply supports the finding below in this instance.

We are impelled, however, to the view that the allowance to the plaintiffs of $3,280 for extra work done upon embankment was unauthorized, since it clearly appears that this work was assumed by the terms of their contract. This contract provided (paragraph 6):

"The parties of the second part shall well and duly observe and follow all provisions of the said contract, made by the party of the first part and the said city, and the specifications thereof, so far as the same affect or relate to work herein agreed by them to be performed, or any part thereof; and they especially agree to do and perform all such work or service as the party of the first part may be required to do under the headings 'rock excavation,' 'earth excavation,' and 'embankment,' in said specifications, not herein otherwise provided for."

It is to be noticed that the clause "not herein otherwise provided for" had reference to the observance of the city's specifications touching each of the three headings "earth," "rock," and "embankment," and the plaintiffs' contract, in another paragraph, contained a materially different provision from that specified by the city with regard to the rock excavation, to wit, the preparation of stone for "broken ashler masonry." Hence, in order that a meaning may be given to the excepting clause, resort need not be had to a strained construction of any provision of the contract touching the embank-

ment work, and a reasonable interpretation of the clause next to be noticed, and upon which the recovery appears to have been based, militates against the respondents' claim. The second paragraph of the plaintiffs' contract, as originally drafted by Dwyer, read:

"All earth or soil found in the earth excavation shall be removed and deposited by the parties of the second part, as directed by the party of the first part, and, if necessary, shall be first piled, and afterwards spread over the embankment."

Before execution of the instrument, the words "and, if necessary, shall be first piled, and afterwards spread over the embankment," were stricken out at the plaintiffs' instance, and this appears to have been taken by the trial court negatively, as some expression of an intention that the embankment work was not to be assumed. In the first place, we observe that the words stricken out recognized the existence of embankment upon which the earth should be spread. Hence, it cannot be inferred that the words themselves called for the construction of embankment; that is, that they merely expressed, in another form, the requirements of paragraph 6, above quoted. Thus, the act of striking them out did not evidence an intention to dispense with the specific obligation assumed to do such work. Further, it appears that the piling of earth formed no part of the work upon embankment, according to the city's specifications, nor did such specifications call for spreading, after the labor, in its numerous details, as required in the making of embankment, had been performed. The only effect to be reasonably given to the act of striking out the words noted appears to be that the plaintiffs did not agree to assume any further burdens under the contract, but certainly no intention to annul the expressed provisions of the agreement calling for embankment work can be gathered. It may be that the plaintiffs entered into a losing venture, but their contract is unambiguous in its terms, and, as framed, defines the rights of the parties in this case.

The only exception taken upon the trial which might call for any discussion raised the point as to the admissibility of the testimony showing that the words referred to in paragraph 2 were actually contained in the proposed contract, and afterwards stricken out; but our conclusion upon the question of extra work renders consideration of the ruling unnecessary.

The judgment must be reversed, and a new trial ordered, with costs to the appellant to abide the event, unless the plaintiffs stipulate to reduce the amount of the judgment by the sum of $3,280, in which event the judgment is affirmed, with costs.